**EFiled: Jul 26 2017 09:39AM EDT**
**Transaction ID 60897524**
**Case No. 11138-VCS**

COURT OF CHANCERY
OF THE
STATE OF DELAWARE

JOSEPH R. SLIGHTS III
VICE CHANCELLOR

417 S. State Street
Dover, Delaware 19901
Telephone: (302) 739-4397
Facsimile: (302) 739-6179

Date Submitted: June 30, 2017
Date Decided: July 26, 2017

Theodore A. Kittila, Esquire
Greenhill Law Group, LLC
1000 North Market Street, #1200
Wilmington, DE 19801

R. Judson Scaggs, Jr., Esquire
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
Wilmington, DE 19801

Re:   *Nguyen v. View, Inc.*
      C.A. No. 11138-VCS

Dear Counsel:

In the fall of 2009, Defendant, View, Inc., pursued a round of Series B preferred stock financing. In connection with that financing, View sought the consent of Plaintiff, Paul Nguyen, then-owner of a majority of View's common stock. Nguyen initially consented to the Series B Financing as consideration for settling various claims he had brought against View. The Settlement Agreement allowed Nguyen a seven-day revocation period pursuant to which he reserved the right to withdraw his consent to the Settlement Agreement, including to the Series B Financing. Nguyen exercised that right and timely revoked his consent.

Unbeknownst to him, however, View had already closed the Series B Financing. Thereafter, View contested Nguyen's right to revoke his consent and argued that it had validly closed the Series B Financing during the seven-day revocation period.

The parties submitted the dispute regarding the validity of Nguyen's alleged revocation of consent to binding arbitration and agreed that the arbitrator would also decide the related issue of whether the Series B Financing was valid. While the arbitration was pending, View proceeded to close additional rounds of financing totaling approximately $500 million. On December 18, 2015, the arbitrator ruled that Nguyen's revocation of his consent to the Settlement Agreement was valid and, therefore, that the closing of the Series B Financing was "void and invalid." In early 2016, View attempted to right its capital structure through a series of ratifications of various charter amendments and other corporate acts, including the now-void Series B Financing, pursuant to 8 *Del. C.* § 204.

The operative Amended Verified Complaint filed by Nguyen alleges that View's attempts to ratify the various rounds of financing are improper and seeks a declaration of invalidity under 8 *Del. C.* § 205. View moved to dismiss the Complaint under Court of Chancery Rule 12(b)(6) for failure to state a claim upon which relief can be granted. The Court denied the motion to dismiss by opinion and

order dated June 6, 2017 (the "Opinion"), upon concluding that Nguyen had pled facts that supported a reasonable inference that the Series B Financing was void and that the attempts to repair the void acts under Section 204 were invalid.[1] View has moved for reargument under Court of Chancery Rule 59(f). For the reasons that follow, that motion is denied.

As noted in the Opinion, Defendant's motion to dismiss raised the "gating issue" of whether the corporate acts that View purportedly ratified in early 2016 were eligible for ratification under Section 204.[2] Specifically, the threshold question, which was a matter of first impression, was whether a corporate act that the majority of shareholders entitled to vote thereon deliberately declined to authorize could retroactively be authorized.[3] To answer this question, I turned to the plain language of the statute as well as relevant legislative history.[4] Due to Nguyen's revocation of his consent, View did not have the power to take the defective

---

[1] 2017 WL 2439074, at *11 (Del. Ch. June 6, 2017).

[2] *Id.* at *6.

[3] *Id.*

[4] *See id.* at *7.

corporate act "at the time such act was purportedly taken," as required by the statute.[5]

I determined that Nguyen's deliberate decision as majority stockholder to revoke his consent to the Series B Financing was not the type of "failure of authorization" that Section 204 contemplates as subject to later ratification. Nguyen's deliberate revocation was, instead, a classic example of a majority stockholder exercising its franchise to vote "no" on a corporate proposal.[6] Under these circumstances, I determined that Nguyen had pled facts supporting his claims for declaratory judgment that the 2016 ratifications were not a valid deployment of Section 204, and denied the motion to dismiss.[7]

The Court will deny a motion for reargument "unless the Court has overlooked a decision or principle of law that would have a controlling effect or the Court has misapprehended the law or the facts so that the outcome of the decision would be affected."[8] Where a motion for reargument "merely rehashes arguments already

---

[5] *Id.* at *8.

[6] *Id.* at *9.

[7] *Id.* at *11.

[8] *Stein v. Orloff*, 1985 WL 21136, at *2 (Del. Ch. Sept. 26, 1985).

made by the parties and considered by the Court when reaching the decision from which reargument is sought, the motion must be denied."[9]

View moves for reargument on the grounds that: (1) the Opinion misunderstood the nature of a corporation's power to take and then correct a defective corporate act under Section 204; and (2) the Opinion impermissibly carves out "rejected" acts from ratification under Section 204.[10]  I address these arguments in turn.

---

[9] *Wong v. USES Hldg. Corp.*, 2016 WL 1436594, at *1 (Del. Ch. Apr. 5, 2016) (citing *Lewis v. Aronson*, 1985 WL 21141, at *2 (Del. Ch. June 7, 1985)).

[10] View also contends that the Court misapprehended the timeline of relevant facts based on a statement in the introduction of the Opinion: "[p]rior to the closing of the [Series B Financing] transaction, however, Nguyen purported to revoke his consent . . ." Def.'s Mot. for Reargument ("Motion") ¶ 11 (citing Opinion at *1).  As View well knows, however, the Court clearly understood the timeline—that Nguyen provided his consent to the Series B Financing as part of his consent to the Settlement Agreement on September 18, 2009, View then closed the Series B Financing during the seven-day revocation period, Nguyen then exercised his revocation right during the revocation period, and Nguyen's revocation of his consent was then deemed by the arbitrator to have rendered the Series B Financing invalid and void.  This timeline is clearly set forth in the Opinion.  Opinion at *4–5.  View's attempt on reargument to exploit a general statement in the introduction, clearly not intended as a definitive statement of the background facts, by arguing that the Opinion misapprehended critical facts, particularly when the background facts in the Opinion clearly and accurately recite the timeline, comes with little grace.  To be clear, I am quite satisfied that View has failed to identify a fact the Court misapprehended such that the "outcome of the decision would be affected." *Wong*, 2016 WL 1436594, at *1.

First, View argues that the Opinion misapprehended Section 204 when it determined that the "power to act" referenced in the statute means that the corporation must have the ability to take an act sought to be ratified at the time of the defective corporate act.[11]  Rather, Defendant argues, the defective corporate act must be only a "*type of act* that corporations are authorized to take" and that corporations need not have had the "actual ability to take the act."[12]  View has made this argument previously, notably in its supplemental briefing provided to the Court on the "gating issue."[13]  In that submission, View argued that each act that it purported to ratify constituted a "defective corporate act" taken and then corrected "within its power as a Delaware corporation."[14]

View's argument was acknowledged by the Court[15] but then rejected because "Section 204 makes clear that the defective corporate acts that a corporation purports

---

[11] Motion ¶ 4.

[12] *Id.*

[13] *See* Letter from R. Judson Scaggs, Jr., dated Mar. 6, 2017, in response to Pl.'s Feb. 20, 2017 Letter regarding supplemental briefing on the "Gating Issue" (Transaction ID 60296587) ("Mar. 6 Letter") 3.

[14] *Id.* (citing 8 *Del. C.* §§ 121, 151, 157).

[15] *See* Opinion at *8 (noting that "View correctly points out that the Company had "the power" to "issue one or more classes of stock" and to "issue . . . rights or options," in addition to the "powers and privileges . . . necessary or convenient to the conduct,

to ratify must be within the corporation's power '*at the time such act was purportedly taken.*'"[16]  The Court looked at the operative reality of the Company when the Series B Financing purportedly closed, namely that the majority common stockholder had not yet given his definitive and binding consent to the transaction. When Nguyen withdrew his consent, as was his right, and the arbitrator then determined that the properly withdrawn consent rendered the Series B Financing void, the ruling confirmed that View did not have the "power" to undertake the Series B Financing at the time it closed.[17]  View's rehash of previously advanced arguments has done nothing to change that result.

View cites to *In re Xencor, Inc.*,[18] for the proposition that this court has previously sanctioned ratification of the same sort of failure of authorization that occurred here.[19]  In *Xencor*, this court approved a settlement agreement involving ratification of a certificate of incorporation under Section 205 where the certificate

---

promotion or attainment of the business or purposes set forth in its certificate of incorporation.") (internal citations omitted).

[16] *Id.* at *9 (citing 8 *Del. C.* § 204)

[17] *Id.*

[18] C.A. No. 10742-CB (Del. Ch. Dec. 10, 2015) (TRANSCRIPT).

[19] Motion ¶ 5.

was filed without a required class vote.[20] That scenario, however, is patently distinct from this case, where Nguyen, the majority common stockholder, considered and then deliberately rejected the Series B Financing.[21]

The argument that View possessed the "power" under Section 204 to ratify the void Series B Financing was previously advanced, considered and rejected. That View disagrees with that decision is not a valid ground for reargument.[22]

Second, View argues that the Court inappropriately carved out "rejected" acts from acts that are invalid due to a "failure of authorization."[23] According to View, "rejected" acts are properly included within acts that a corporation failed to authorize "in compliance with the DGCL."[24] Again, View has already, and repeatedly, made

---

[20] *Id.*

[21] *See* Opinion at *9 ("The plain meaning of 'failure' in this context is distinct from a 'no' vote or outright rejection of the proposal by the majority of stockholders entitled to vote.").

[22] *Jutrau v. Jansing*, 2014 WL 6901461, at *2 (Del. Ch. Dec. 8, 2014), *aff'd*, 123 A.3d 938 (Del. 2015) (TABLE) ("Mere disagreement with the Court's resolution of a matter is not sufficient, and the Court will deny a motion for reargument that does no more than restate a party's prior arguments.").

[23] Motion ¶ 7.

[24] Motion ¶ 9.

this argument.[25]  And it was addressed explicitly in the Opinion.[26]  It is not, therefore,

a proper ground for reargument.[27]

View has failed to identify any law or facts that the Court misapprehended or

failed to consider.  Accordingly, the Motion for Reargument must be DENIED.

Very truly yours,

*/s/ Joseph R. Slights III*

---

[25] *See* Mar. 6 Letter at 7–8 ("The definition of 'failure of authorization' in Section 204 does not differentiate between different kinds of failures of authorization, let alone between different ways in which a required vote is not validly obtained."); Def. View, Inc.'s Opening Br. in Supp. of its Mot. to Dismiss the Am. Verified Compl. 48 n.24 ("An action is either consented to, or it is not, and a decision by the stockholders not to consent to an action is not a 'rejection' of the act that precludes the Company from later taking action to certify it."); Tr. of Oral Arg. on Def.'s Mot. to Dismiss 112:18–116:23.

[26] Opinion at *9 ("View's interpretation of Nguyen's revocation of his consent to the Series B Financing is contrary to the plain meaning of the words 'failure' and 'rejection.' It also diminishes the import of the stockholders' right to vote 'no.'  As View's counsel conceded at oral argument, View's construction of Section 204 would allow a corporation to ratify an act that stockholders years earlier had expressly voted not to take and to certify that act as effective on the date the stockholders rejected it.  Nothing in the text of the statute or its legislative history suggests that the General Assembly intended to facilitate such a result.") (internal citations omitted).

[27] *See MetCap Secs. LLC v. Pearl Senior Care, Inc.*, 2007 WL 195442, at *3 (Del. Ch. June 29, 2007) ("[The movant] may not now attempt to relitigate a claim that has already been considered-and rejected-by this Court.").